UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NANCY CHANDRA DEWI,<br><br>                Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, et al.,<br><br>                Defendant. | CV 12-2891 ABC (SHx)<br><br>ORDER RE: WELLS FARGO BANK, N.A.'S MOTION TO DISMISS AND MOTION TO STRIKE |

    Pending before the Court are a motion to dismiss and a motion to strike filed by Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo's") on April 24, 2012. (Docket Nos. 9, 10.) Plaintiff Nancy Chandra Dewi opposed both motions on June 4, 2012, and Wells Fargo replied on June 11, 2012. The Court previously found these matters appropriate for resolution without oral argument and took them under submission. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons below, both motions are GRANTED IN PART and DENIED IN PART. Plaintiff will be granted leave to amend as provided herein.

## FACTUAL ALLEGATIONS

    At some point, Plaintiff obtained a mortgage from Wells Fargo

secured by real property, but she apparently began experiencing some trouble making her mortgage payments. So, in August 2011, Plaintiff obtained a forbearance on her mortgage payments from Wells Fargo for September, October, and November 2011.[1] (Compl. ¶ 10.) During this time, she discovered that three Credit Reporting Agencies — Transunion, Experian, and Equifax (the "CRAs") — were reporting her late on her payments, even though her "payments were always made on time." (Id.) Plaintiff disputed these reports to the CRAs by informing the CRAs of both her forbearance agreement and her timely payments; she also "provided the name and number to contact the Account Manager at WELLS FARGO to verify that her account was never late." (Id.) "On information and belief, one or more of the credit bureaus sent dispute notices to WELLS FARGO, thereby activating WELLS FARGO'S obligations to Plaintiff under the Fair Credit Reporting Act." (Id.)

"Despite the insistence of Plaintiff, the Defendants . . . failed to correct the errors and failed to undertake sufficient investigations upon being notified of the errors" (id. ¶ 14) and instead "continued to erroneously report Plaintiff late on her mortgage payments" (id. ¶ 25). On top of that, "none of the defendants communicated anything to any person to suggest that Plaintiff was disputing the debt." (Id. ¶ 20.)

As relevant here, Plaintiff claims that Defendants Wells Fargo willfully and negligently violated the Federal Fair Credit Reporting Act (the "FCRA") by reporting erroneous information on her credit

---

[1] Plaintiff does not allege the terms of the forbearance agreement or attach it to her complaint, so the Court accepts her allegations of its terms as true.

report. (Id. ¶ 15.) Plaintiff further alleges that Defendants violated the California Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (id. ¶ 20) and by "misrepresent[ing] the character, amount and legal status of the debt" (id. ¶ 27). Finally, Plaintiff claims that Defendants violated the California Consumer Credit Reporting Agencies Act (the "CCRAA") by furnishing inaccurate information to the CRAs. (Id. ¶ 30.)

As a result of these violations, Plaintiff claims to have suffered "actual damages, pain and suffering, punitive damages, penalties, costs and attorney fees." (Id. ¶ 16.) Her actual damages stem from a higher interest rate she must pay on at least one credit card, the reduction in "her line of credit," and a job opportunity that was withdrawn (id. ¶ 24), as well as the "loss of wages, [and] damage to [her] credit reputation . . ." (id. ¶ 32).

Wells Fargo has moved to dismiss all of Plaintiff's claims on various grounds and has moved to strike her requests for punitive damages, emotional distress damages (i.e., "pain and suffering"), and attorney's fees.

**LEGAL STANDARD**

**A.  Motion to Dismiss**

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556

U.S. 662, 677–78 (2009). A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and alterations omitted). Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party. See Newdow v. Lefevre, 598 F.3d 638, 642 (9th Cir. 2010), cert. denied, 131 S. Ct. 1612 (2011).

In analyzing the sufficiency of the complaint, the Court must first look at the requirements of the causes of action alleged. See Iqbal, 556 U.S. at 675. The Court may then identify and disregard any legal conclusions, which are not subject to the requirement that the Court must accept as true all of the allegations contained in the complaint. Id. at 678. The Court must then decide whether well-pleaded factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." Id. at 679. In doing so, the Court may not consider material beyond the pleadings, but may consider judicially noticeable documents, documents attached to the complaint, or documents to which the complaint refers extensively or which form the basis of the plaintiff's claims in the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

**B. Motion to Strike**

The Court may strike a pleading that contains "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).

Matters are "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" if they "do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Matters are "scandalous" if they "cast a cruelly derogatory light on a party or other person." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

## DISCUSSION

### A.  FCRA Claim

Congress enacted the FCRA to counteract unfair and inaccurate reporting practices that undermine consumer confidence. See 15 U.S.C.A. § 1681(a); Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1058—59 (9th Cir. 2002). Section 1681n(a) of the FCRA provides in relevant part: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 or more than $1,000," plus punitive damages, costs, and reasonable attorney's fees.  Section 1681o similarly provides: "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer," plus costs and reasonable attorney's fees.

5

The Ninth Circuit has held that these provisions create a private right of action against a furnisher of credit reporting information that violates the duties imposed by § 1681s-2(b), but not for violating the duties imposed by § 1681s-2(a). Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009); Nelson, 282 F.3d at 1059–60. Therefore, Plaintiff's only actionable claims against Wells Fargo as a furnisher must fall within § 1681s-2(b) of the FCRA.

Section 1681s-2(b) governs the duties of furnishers of credit information only when they receive notice from CRAs of a dispute; "notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman, 584 F.3d at 1154. Once the furnisher receives notice from the CRA of "a dispute with regard to the completeness or accuracy of any information provided by" the furnisher, the furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
>
> > (i) modify that item of information;

```
                    (ii) delete that item of information; or
                    (iii)   permanently block the reporting of
                            that item of information.
```

§ 1681S-2(b). Any investigation by the furnisher under this provision must be "reasonable." Gorman, 584 F.3d at 1157.

A consumer report that is "technically accurate" may still be deemed "incomplete or inaccurate" under subsection (b) if the furnisher has omitted information that "creates a misleading impression," such as that the debt is disputed. Id. at 1163. Therefore, "[i]t is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b)." Id.

Well Fargo first argues that Plaintiff's FCRA claim fails because she did not sufficiently allege that Wells Fargo received notification of her dispute from the CRAs, and therefore Wells Fargo's duties under subsection (b) were not triggered. Plaintiff alleges that she "sent correspondence to [the CRAs] on November 18, 2011" disputing the accuracy of the report furnished by Wells Fargo and, "[o]n information and belief, one or more of the credit bureaus sent dispute notices to WELLS FARGO, thereby activating WELLS FARGO'S obligations to Plaintiff under the Fair Credit Reporting Act." (Compl. ¶ 10.) Wells Fargo suggests that this is insufficient because Plaintiff must have known or at least was able to determine whether the CRAs actually sent notice of the dispute to Wells Fargo, and she was required to verify that before she filed her complaint. See, e.g., Riese v. Chase Home Finance, LLC, No. C 11-03297 NJV, 2011 WL 4344590, at *5 (N.D. Cal. Sept. 13, 2011); Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1143

7

(N.D. Cal. 2005); Densmore v. Gen. Motors Acceptance Corp., No. 03 C 1866, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003). In other words, Wells Fargo seeks to place the burden on Plaintiff to conduct a pre-suit investigation to verify that the CRAs did, in fact, notify Wells Fargo of her dispute in order to state a claim under § 1681s-2(b).

The Court is not persuaded by the cases cited or by Wells Fargo's reasoning.[2] The court in Densmore rejected the plaintiff's argument that he was not required to "verify whether [the furnisher] received notice" because that information was "readily ascertainable without discovery." 2003 WL 22220177, at *2. The court cited § 1681i(a)(6)(A), which obligates a CRA to, inter alia, "provide written notice to a consumer of the results of a reinvestigation" of a dispute, and, if requested by the consumer, to provide a notice with "a description of the procedure used to determine the accuracy and completeness of the information . . ., including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available[.]" § 1681i(a)(6)(A), (B)(iii). In the court's view, because the plaintiff would have been provided notice that the CRAs contacted the furnisher about the dispute upon his request, he

---

[2]Both Howard and Riese are distinguishable on their facts and do not assist the Court's analysis here. In Riese, the plaintiff apparently did not allege any facts to suggest that the CRA notified the furnisher, so the court granted plaintiff leave to amend to do so. 2011 WL 4344590, at *4. In Howard, the court granted leave to allow the plaintiff to allege which defendants she notified of her dispute because if she only notified the furnisher directly (as opposed to the CRAs, which then notified the furnisher), she could not bring a claim under § 1681s-2(b). 371 F. Supp. 2d at 1146–47. Here, by contrast, Plaintiff expressly alleges the she notified the CRAs of her dispute, which then allegedly notified Wells Fargo.

could not "drag [the furnisher] into court without conducting a concrete investigation into whether its duties under the FCRA were ever triggered." 2003 WL 22220177, at *2.

But by the same token, § 1681i(a)(2) obligates the CRA to notify a furnisher within five days of receiving notice of a dispute from the consumer. § 1681i(a)(2)(A). At least one court has held that a consumer may reasonably rely on the inference that a CRA complied with its statutory duty under § 1681i(a)(2) to notify a furnisher of a dispute. See Sheffer v. Experian Info. Solutions, Inc., 249 F. Supp. 2d 560, 562 n.3 (E.D. Penn. 2003) (finding on a motion to dismiss that, under § 1681i(a)(2), the furnisher "would have been notified by the [CRAs] about the disputed information in Plaintiff's credit report unless those credit reporting agencies were acting in violation of the FCRA" and "this issue is one appropriately resolved after discovery has been completed"). As between these competing reasonable inferences, the Court must draw the one in Plaintiff's favor at this stage, so Plaintiff need not have conducted a pre-suit investigation and the issue of notification is one to be explored in discovery. See Ashcroft, 556 U.S. at 677–78.

Wells Fargo next argues that Plaintiff has not sufficiently alleged that it acted unlawfully, suggesting that Plaintiff must allege the "relevant terms of the statute." (Mot. 7.) But Plaintiff alleges sufficient facts to show that Wells Fargo either negligently or willfully violated the FCRA. Plaintiff claims that her "payments were always made on time" despite the contrary statements in her reports, suggesting that Defendants were negligently reporting inaccuracies. Further, Plaintiff alleges that she made "many phone calls and [sent many] letters to acknowledge that Plaintiff was never

9

late on her payments," suggesting that Defendants were aware of the inaccuracies, or at least the disputes, and knowingly refused to sufficiently investigate the dispute and correct the problems. Plaintiff has therefore sufficiently alleged either negligent or willful wrongdoing under the FCRA against Wells Fargo.

Wells Fargo also argues that Plaintiff's FCRA claim fails because she entered a forbearance agreement, suggesting that she could not pay her mortgage and Wells Fargo's report to the CRAs was accurate. Even if true, this argument fails. The FCRA prohibited Wells Fargo from not only reporting inaccurate information, but from also reporting misleading information, such as by failing to report that Plaintiff raised a "bona fide dispute" as to the accuracy of the credit information Wells Fargo reported. See Gorman, 584 F.3d at 1163. Plaintiff has not alleged the terms of the forbearance agreement, but drawing reasonable inferences in her favor, Wells Fargo's failure to report that she raised a "bona fide dispute" over the information Wells Fargo reported based on the forbearance agreement could very well constitute misleading information in violation of the FCRA. Therefore, even if Plaintiff entered in a forbearance agreement with Wells Fargo, she has sufficiently alleged a violation of the FCRA.

Finally, Wells Fargo argues that Plaintiff did not plead facts to suggest she suffered actual injury as a result of its inaccurate and misleading reporting. However, Plaintiff plainly alleges injury resulting from Wells Fargo's actions: the combined amount of the higher interest rate she must pay on at least one credit card, the reduction in "her line of credit," a job opportunity that was withdrawn, the "loss of wages, [and] damage to [her] credit reputation . . . ." This is more than sufficient to state a claim for actual

10

Case 2:12-cv-02891-ABC-SH  Document 33  Filed 08/08/12  Page 11 of 18  Page ID #:211

damages under the FCRA. See Drew v. Equifax Info. Servs., LLC, __ F.3d __, __, 2012 WL 3186110, at *6 (9th Cir. Aug. 7, 2012) (holding that "repeated inquiries about [the plaintiff's] account may have affected his credit score" and could be considered damages under the FCRA). Indeed, these damages represent the very harms the FCRA was designed to avoid. See Gorman, 584 F.3d at 1153; see also Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) ("The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them . . . and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.").[3]

Thus, Plaintiff has sufficiently alleged violations of the FCRA against Wells Fargo.

**B.   Rosenthal Act Claim**

The Rosenthal Act incorporates into California law the provisions of the federal Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692b—1692j. See Cal. Civ. Code § 1788.17. Here, Plaintiff alleges that Wells Fargo violated the Rosenthal Act by violating § 1692e(8) of the FDCPA, which prohibits a "debt collector" from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

---

[3] Under § 1681n, a plaintiff does not need to plead or prove actual damages for willful violations of the FCRA, so even if Plaintiff failed to allege actual damages here, her willful claim is not doomed. See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 718–19 (9th Cir. 2010).

Wells Fargo argues that this claim is preempted by the FCRA. The Court agrees.[4] Section 1681t(b)(1)(F) of the FCRA broadly preempts any state law that regulates furnishers of credit information:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply . . . with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or . . . with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

Courts have repeatedly held that claims under the Rosenthal Act against furnishers for their reporting of credit information are preempted by this provision, even though the Rosenthal Act expressly regulates "debt collectors," and not furnishers of credit information. See, e.g., Corby v. Am. Express Co., No. CV 10-05575 ODW (JCx), 2011 WL 4625719, at *7 (C.D. Cal. Oct. 5, 2011); Pirouzian v. SLM Corp., 396 F. Supp. 2d 1124, 1130 (S.D. Cal. 2005); cf. Buraye v. Equifax, 625 F. Supp. 2d 894, 899 (C.D. Cal. 2008) (agreeing with the "majority" of courts that the FCRA "totally preempts all 'state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2"); Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005) (finding state-law claims preempted because, "[o]n its face, the FCRA precludes all state statutory or common law causes of action that would impose any 'requirement or prohibition' on the furnishers of credit information").

In Pirouzian, for example, the plaintiff requested and obtained

---

[4] Because the Court finds this claim preempted, it need not resolve the parties' disputes over the meaning "debt" and "debt collector" under the Rosenthal Act.

12

an oral forbearance agreement on his loan repayments, which the plaintiff understood included the lender's promise to "refrain from reporting negative credit information about Plaintiff to credit reporting agencies . . ." 396 F. Supp. 2d at 1125—26. The lender nevertheless negatively reported the plaintiff's payments to the CRAs and failed to inform the CRAs that there was an outstanding consumer dispute. Id. at 1126. The plaintiff brought claims under the Rosenthal Act, but they were preempted by the FCRA because they "pertain[ed] to Defendant's reporting of or failure to report certain information about Plaintiff," which, in the court's view, "clearly relate[d] 'to the responsibilities of persons who furnish information to consumer reporting agencies'" under the FCRA. Id. at 1130.

Similarly in Corby, the plaintiff sued a lender for reporting his credit information to CRAs in violation of the parties' agreement to the contrary. 2011 WL 4625719, at *1-2. Plaintiff alleged a violation of the Rosenthal Act by way of § 1692e(8) of the FDCPA, but the court held that "[t]he plain language of the FCRA clearly preempt[ed] such a state claim . . . ." Id. at *7.

Here, as in Pirouzian and Corby, Plaintiff's Rosenthal Act claim is plainly preempted by the FCRA because it is expressly based upon "the basic fact of false credit reporting" by Wells Fargo. (Compl. ¶ 20.) Plaintiff argues against this result by claiming that, while Wells Fargo is a "furnisher of information" for the purposes of liability under § 1681s-2(b) of the FCRA, it is merely a "debt collector," and not a furnisher, for the purposes of preemption under § 1681t(b)(1)(F). Absent some indication that Congress intended these two provisions to have different meanings, the Court will interpret them similarly. See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d

13

876, 890 (9th Cir. 2010) ("'We generally adhere to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation.'"). Moreover, even if Plaintiff is correct that Wells Fargo could be considered a "debt collector" under the FDCPA and the Rosenthal Act (a point the Court does not decide), that does not mean that Wells Fargo cannot also be a furnisher under the FCRA for both liability and preemption purposes.

It is clear that Plaintiff's Rosenthal Act claim against Wells Fargo is preempted and must be dismissed.[5] Amendment would be futile, so the claim will be dismissed with prejudice. See id. at 892–93.

**C. CCRAA Claim**

Section 1785.25(a) of the CCRAA states that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Section 1785.25(g) provides a private right of action to enforce section 1785.25(a) and section 1785.31 provides various remedies. The FCRA expressly exempts section 1785.25(a) from preemption and the Ninth Circuit has held that both sections 1785.25(g) and 1785.31 are also exempted from preemption by the FCRA.

---

[5] Plaintiff cites two California cases addressing the FCRA's preemption of the CCRAA to support her argument that her Rosenthal Act claim is not preempted. See Cisneros v. U.D. Registry, Inc., 39 Cal. App. 4th 548, 577–78 (1995); Gomon v. TRW, Inc., 28 Cal. App. 4th 1161, 1173–74 (1994). Neither case defeats preemption here because both addressed preemption of the attorney's fees provision in the CCRAA, not preemption in the context of Rosenthal Act claims against a furnisher of credit information.

See Gorman, 584 F.3d at 1170—72.[6]

Wells Fargo argues that Plaintiff did not sufficiently plead a CCRAA claim because she did not allege "details . . . as to the information provided to the credit reporting agencies." (Mot. 12.) Yet, just as Plaintiff's allegations were sufficient to state a claim under the FCRA, they are also sufficient to state a claim that Wells Fargo violated the CCRAA. See Guimond, 45 F.3d at 1336 ("Since the CCRAA mirrors the FCRA, [plaintiff] should be successful on the same claims under the identical provisions of the CCRAA."). Plaintiff alleged that her payments were timely, that she continued to dispute Wells Fargo's contrary reports to the CRAs, and that she notified the CRAs of her dispute, which then transmitted those disputes to Wells Fargo. Wells Fargo therefore either knew or should have known that Plaintiff's credit information was "incomplete or inaccurate," which is enough to state a claim under section 1785.25(a) of the CCRAA.[7]

---

[6] Plaintiff cites section 1785.25(f) in passing (Opp. 20), but to the extent she is claiming a violation of that section, it is preempted. See Carvalho, 629 F.3d at 888—89.

[7] Wells Fargo cites two cases to argue that Plaintiff's allegations are insufficient, but in both cases the plaintiffs alleged fewer facts than Plaintiff has alleged here. See Quinlan v. Citimortgage, Inc., No. 2:11-cv-00986-MCE-EFB, 2011 WL 5299311, at *3 (E.D. Cal. Nov. 2, 2011) (finding that plaintiff did not allege "what information was inaccurate or to which agency or agencies the allegedly improper information was provided"); Palestini v. Homecomings Fin., LLC, No. 10CV1049-MMA, 2010 WL 3339459, at *12 (S.D. Cal. Aug. 23, 2010) (finding that plaintiffs "fail[ed] to allege what Defendants falsely reported any information such that Plaintiffs would be entitled to relief under the CCRAA."). Wells Fargo also cites a portion of Palestini where the court seemed to suggest that the plaintiffs could not state a claim under the CCRAA because they likely defaulted on their loan, so the reported default was accurate. Palestini, 2010 WL 3339459, at *12. That appears to conflict with cases under the CCRAA holding that "a report violates the [CCRAA and the FCRA] when it is misleading or incomplete, even if it is technically accurate." Cisneros, 39 Cal. App. 4th at 579; see also

This claim will not be dismissed.[8]

**D. Motion to Strike**

Wells Fargo moves to strike Plaintiff's request for punitive damages, "pain and suffering" damages, and attorney's fees. The request is GRANTED IN PART and DENIED IN PART.

1. <u>Punitive Damages</u>

Section 1681n(a)(2) of the FCRA expressly entitles Plaintiff to collect punitive damages for willful violations of the FCRA. Likewise, section 1785.31(a)(2)(B) entitles Plaintiff to collect punitive damages for willful violations of the CCRAA, which is not preempted by the FCRA. See <u>Gorman</u>, 584 F.3d at 1171. Willfulness in this context may be shown by merely reckless conduct, see <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 57–58 (2007) (interpreting § 1681n), so Wells Fargo's argument that Plaintiff must allege facts to satisfy the "malice, oppression, or fraud" requirements of California Civil Code section 3294 is misplaced. Because the Court has found that Plaintiff has sufficiently alleged willful violations of the FCRA and CCRAA, the Court will not strike her request for punitive damages.

2. <u>Pain and Suffering Damages</u>

Under §§ 1681n and 1681o of the FCRA, a plaintiff may collect "actual damages," which may include damages for pain and suffering. <u>Guimond</u>, 45 F.3d at 1333; see also <u>Drew</u>, __ F.3d at __, 2012 WL 3186110, at *6. Likewise, section 1785.31(a)(1) of the CCCRAA allows a plaintiff to recover for pain and suffering "when applicable."

---

<u>Carvalho</u>, 629 F.3d at 890 (quoting same). Thus, the Court does not find the reasoning in <u>Palestini</u> persuasive on this point.

[8]For the same reasons already discussed, the Court rejects Wells Fargo's argument that Plaintiff failed to allege injury under the CCRAA.

However, a plaintiff must support her claim for pain and suffering "with something more than [her] own conclusory allegations," such as specific claims of genuine injury. Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002). In Guimond, for example, the plaintiff allegedly suffered "emotional distress, manifested by sleeplessness, nervousness, frustration, and mental anguish resulting from the incorrect information in her credit report." Guimond, 45 F.3d at 1332. The court suggested that this was enough to show actual damages and remanded the claim for trial. Id. at 1333.

Here, although Plaintiff is entitled to pursue emotional distress damages, she alleges neither physical nor emotional injury; she merely identifies the category of "pain and suffering" in a laundry list of categories of damages. That is insufficient to state a plausible entitlement to these damages. The Court grants the motion to strike these damages, but grants Plaintiff leave to amend her complaint to allege facts to support her "pain and suffering" damages claim.

### 3. Attorneys' Fees

Sections 1681n and 1681o of the FCRA allow a prevailing plaintiff to recovery reasonable attorney's fees, as does section 1785.31(a)(1) of the CCRAA. Thus, Plaintiff's request for attorney's fees will not be stricken.

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Wells Fargo's motion. Plaintiff's claim under the Rosenthal Act is DISMISSED WITH PREJUDICE, but her claims under the FCRA and the CCRAA remain. Plaintiff's request for punitive damages and attorney's fees will not be stricken, but the Court STRIKES Plaintiff's request for damages for "pain and suffering" WITH LEAVE TO AMEND.

**Plaintiff must file any amended complaint no later than Monday, August 24, 2012. Failure to do so will result in dismissal with prejudice of Plaintiff's request for damages for "pain and suffering."**

**IT IS SO ORDERED.**

**DATED:    August 8, 2012**      _____

                               AUDREY B. COLLINS
                               CHIEF UNITED STATES DISTRICT JUDGE